## FRANCIS BULKLEY *vs.* NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The 3d section of the act of 1850 with regard to railroads, (Comp. 1854, p. 753,) which provides that all railroad companies shall construct cattle-guards at highway crossings, unless in the opinion of the railroad commissioners it shall be unnecessary, applies to railroad companies incorporated before the passage of the act, as well as to those incorporated after.

And it has the effect of an alteration of the charter of a company incorporated previously, by a charter which did not impose the duty, but which contained a provision that it might be altered at the pleasure of the legislature.

In an action against a railroad company for running over cattle that had got upon the track of the road in consequence of the neglect of the company to make cattle-guards, the defendants, for the purpose of showing that the railroad commissioners were of opinion that the cattle-guards were unnecessary, offered evidence, which they claimed to be conclusive on the subject, that the commissioners had frequently passed over that part of the road in the cars, on their official examination of the road, and had never directed or advised that the cattle-guards be made; it appearing however that their attention had never been specially called to the crossing in question. The court admitted the evidence, and instructed the jury that they might consider it, but that it was not conclusive as to such opinion of the commissioners. Held, on a motion of the defendants for a new trial, that the evidence was scarcely admissible, and the charge more favorable to the defendants than they had a right to demand.

The plaintiff had driven his cows home after dark in the evening and left them in the highway in front of his house, intending to milk them there, and then put them into his inclosure, and while they were so left went into his house for a short time. While he was gone they strayed away and he searched for them until eleven o'clock at night. About ten o'clock at night they were run over by the defendants' cars. The railroad was about a mile from the plaintiff's house, and he had not searched in that direction. The suffering of cattle to run at large was forbidden by statute. The judge charged the jury that the plaintiff had a right to place his cows in the highway for the temporary purpose of milking them, and that if he left them there, intending to milk them within a reasonable time and then to put them into his inclosure, and exercised ordinary care for the purpose of keeping them, he was not to be regarded as having suffered them to go at large within the meaning of the statute, and was not guilty of such negligence as would prevent his recovery. Held, on motion of the defendants for a new trial, that the question of negligence was properly one of fact for the jury, but that, so far as it could be treated as involving any legal question, the law was properly stated in the charge.

ACTION on the case, for damage to the plaintiff's cows, which were run over by the defendants' cars.

The negligence averred was that of not keeping up cattle-guards at a place where the railroad crossed a public highway, in consequence of which neglect the cows were able to pass and did pass from the highway upon and along the track of the railroad, where they were killed by a night train. It was not claimed that the defendants were guilty of any want of care in the running of the cars.

The 3d section of an act passed in the year 1850 on the subject of railroads is as follows: " All railroad companies shall be required to construct suitable cattle-guards, in the form of culverts or pits, at all places where their railroad shall cross public highways and passways, and, in connection with culverts or cattle-guards, a good and sufficient fence to the lands of the adjoining proprietor, except at such places as, in the opinion of the commissioners on the respective railroads, the constructing of such culverts or cattle-guards and fences shall be inexpedient or unnecessary. And said cattle-guards and fences shall be constructed in such manner as to prevent and restrain cattle from passing from said public highways and passways on to such railroad."

This act was approved on the 22d of June, 1850. At the same session of the legislature an act had been passed, which was approved on the 7th of June, providing that every railroad company which had then been or should thereafter be incorporated, should construct such cattle-guards, at highway crossings, as *should be ordered by the commissioners on such railroad.* It was not claimed on the part of the plaintiff that any such order as is contemplated by this act had been given.

The defendants had been chartered and in operation as a railroad company before the passage of either of these acts, their charter containing no provision requiring them to make cattle-guards. It however contained a provision that it might be altered, amended or repealed at the pleasure of the General Assembly. The defendants claimed that they were not bound by the provisions of the acts above mentioned, in consequence of their prior incorporation, and requested the court so to charge the jury. The court however instructed the jury that the act first mentioned applied to all railroad companies,

whether incorporated before the passage of the act or since, and that it was the duty of the defendants under it to maintain cattle-guards at the place in question.

The defendants offered evidence to prove that the commissioners on their road, and the general railroad commissioners, before the cows were killed, and ever since the construction of the road, had, in the discharge of their duties, frequently passed in the cars of the company over the place where the plaintiff claimed that such cattle-guards ought to have been erected, and had never given any direction to the defendants to make them, or given them any intimation in relation thereto. There was however no evidence to show that the attention of the commissioners had ever been directed to the condition of the road at the crossing in question. The defendants claimed that the fact that the commissioners had so passed on the road, and made no order and expressed no opinion on the subject, was evidence that, in their opinion, cattle-guards at said crossing were unnecessary, and the construction of the same inexpedient, and prayed the court so to charge the jury. The court charged the jury, that this fact was evidence for their consideration, but not conclusive evidence, of the opinion of the commissioners.

The cows were killed about ten o'clock at night, and it was admitted by the plaintiff, that after dark of that evening, between the hours of eight and nine o'clock, the cows in question, with others of the plaintiff, were driven home from the pasture, and left in the highway in front of his house, by the plaintiff's son, for the purpose of being there milked before being turned into the yard near by; that his son, on leaving them in the highway, went into the house to get a pail for the purpose of milking them; that while in the house he got something to eat, and in a few minutes went out and found that the cows were gone; that he made immediate search for them in various directions, and found three of the cows, but not the two which were killed; that he ceased his search about eleven o'clock of the same night, and made no search on the road leading from the plaintiff's house to the railroad, the distance therefrom being about a mile; and the plaintiff

claimed to have proved that his search for the cows was diligent and well directed, though unsuccessful. There being no claim that the town had passed a by-law allowing cattle to run at large in the highways, the defendants claimed that upon these facts the cows were to be considered as suffered by the plaintiff to be at large on the highway, contrary to the provisions of the statute, and that if, while so at large, they wandered upon the railroad, and were killed as the plaintiff claimed, the defendants being guilty of no want of care in the management of their train, the plaintiff could not recover, and requested the court so to charge the jury. They further claimed, that the leaving of the cows in the highway, for the purpose and under the circumstances claimed, and *making no further search for them than as above stated*, was not only evidence of, but constituted in law, such negligence in the plaintiff, that, there being no negligence in the defendants in the running of their train, the plaintiff was not entitled to recover, and requested the court so to charge the jury.

The court charged the jury, that if the cows wandered from the highway upon the railroad for want of cattle-guards at the crossing, and were there killed as was claimed, the plaintiff was entitled to recover, unless the cows were suffered by him to be unlawfully at large on the highway, or unless by his own culpable carelessness he essentially contributed to the occurrence of the accident, or unless the jury found that in the opinion of the railroad commissioners the cattle-guards were unnecessary or inexpedient; that if the plaintiff, in the custody and control of the cows, exercised ordinary care, he did all that the law required him to do, and was in that respect guilty of no fault which could affect his right of recovery; that by " ordinary care " was meant such a degree of care as it was reasonable to expect of the plaintiff under the circumstances—such as men of ordinary intelligence, prudence and discretion ordinarily exercise in such cases; that it was lawful for the plaintiff to place the cows in the highway in front of his house for the temporary purpose of milking them there, and to keep them there a reasonable time for that purpose, and that if he put and left them there for that purpose

only, intending to milk them immediately, or within a reasonable time, and then to put them into his own inclosure as soon as that purpose should be accomplished, and not intending to leave them in the highway, and in fact exercised ordinary and reasonable care over them for the purpose of keeping them, and they escaped and strayed notwithstanding such care, they were not suffered to be at large within the meaning of the statute, and the fact that they strayed and went upon the defendants' railroad from the highway under such circumstances, constituted no objection to the plaintiff's recovery.

The plaintiff obtained a verdict, and the defendants moved for a new trial.

*Hawley* and *Abernethy*, in support of the motion.

1. The defendants, having been guilty of no negligence in running their train, can not be liable unless it was their duty to make the cattle-guards. We claim that it was not their duty. Their charter does not require it, and there has been no formal alteration of their charter. If the statutes of 1850 are to be regarded as altering their charter by implication, yet we say that under those statutes they were. not bound, unless specially ordered by the commissioners, to make the cattle-guards. The prior act provides that every railroad company, *which has been or shall be incorporated*, shall make cattle-guards when ordered by the commissioners. The later act provides that *all* railroad companies shall make them unless excused. These two acts are to be construed together. The English rule is that all the acts of Parliament of one session are to be taken together as one act. Taking them thus together, we harmonize them by considering the later act as applicable only to companies thereafter incorporated. That this limitation of its application was intended, is inferable from the fact that the section immediately preceding the one in question, provides that all railroad companies *thereafter incorporated* shall make fences along their roads, and only the same companies would naturally have imposed upon them the further burden, of the same character and object,

of making cattle-guards. The first section is also confined to future companies. It is to be observed that the latter act does not purport to repeal the former, or make any such allusion to it as to show an intention to supersede it, and that both were to take effect together.

2. The conduct of the commissioners in passing over the road so many times and yet not requiring or suggesting that cattle-guards be made at the place in question, should have been held sufficient to excuse the defendants from making them. The statute does not require an express and formal communication to the company of the opinion of the commissioners that the cattle-guards were unnecessary. Where they have examined a road and omitted to direct the making of them, it is to be presumed that they omitted such direction because they thought there was no occasion for making it. They are to be presumed to have done their duty. Their frequent passing over the place in question was not a casual thing, but in the discharge of their official duty in examining the road.

3. The plaintiff was guilty of negligence in allowing his cows to be at large on the highway in the manner admitted. The statute of 1855 expressly forbade him to suffer them to be at large on the highway, and on the facts he should have been held to have suffered them to be at large within the intent of the statute. Care is a relative term. The same care that would be sufficient in a place remote from a railroad, will not be sufficient in a place near óne. The railroad is not a nuisance, but a great public convenience. The public are interésted, as well as the railroad company, in having animals kept from being at large at all in the vicinity of a railroad. If the plaintiff was guilty of any negligence in leaving his cows in the highway it is very clear that he can not recover. *Perkins* v. *Eastern R. R. Co.*, 29 Maine, 307. *Tonawanda R. R. Co.* v. *Munger*, 5 Denio, 255. *Howland* v. *Vincent*, 10 Met., 371. *Hartfield* v. *Roper*, 21 Wend., 615. Angell on Highways, § 346.

*Loomis* and *Wilson*, contra.

1. The statute of 1850 clearly imposed upon the defendants the duty of making the cattle-guards. Their charter was open to any alteration which the legislature might choose to make, and it was not necessary, that, in imposing this burden, the legislature should have made the act an express amendment of the charter. The language of the act is comprehensive—*all railroad companies*. The fact that the preceding sections speak expressly only of future corporations, shows that the legislature had an object in changing its language when it came to the third section, and that object could only be to extend the application of its provisions to *all* railroads. The mischief to be remedied, and the remedy applied, require this construction. This is the only construction that will give entire security to the public. On the construction claimed on the other side, this act conflicts with the prior one of the same session. Upon our construction, the later act only provides a further remedy for the same mischief. If these two acts are inconsistent the later one should prevail.

2. The defendants do not show that they were excused by the commissioners from making the cattle-guards. The burden is on them to show such excuse. Whatever inference might be drawn in other cases from the neglect of the commissioners to order them made, yet none can be here, since it is shown that the attention of the commissioners was never directed to this particular crossing. The statute intended to require an express declaration from the commissioners to the railroad company, of their opinion that the cattle-guards were unnecessary. This declaration it was their duty to apply for and secure. The defendants have had all that they could ask, and more than they were entitled to, in having the facts allowed to go to the jury at all as evidence on the subject.

3. The plaintiff's cows were not "suffered to go at large," within the meaning of the act of 1855. That act intends only a voluntary turning of the cattle loose upon the highway, or conduct that is equivalent to it. Here there was no

such design. And the question whether the plaintiff was guilty of any want of care in the custody of his cows was properly submitted by the judge, as one wholly of fact, to the jury. Such a question is always one of fact and not of law. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566. Angell on Highways, § 26.

ELLSWORTH, J. The principal question in this case is one about which we are entirely agreed, to wit, that the third section of the act of. 1850 applies to the defendants' road, although they were incorporated prior to the passage of the act. Whether we consider the language of the act or its spirit and object, we are satisfied that it must be so understood and applied; and since the defendants' charter is subject to alteration, amendment and repeal, at the pleasure of the General Assembly, there does not seem to be the slightest ground for an objection to this conclusion. It is not a case of the taking away of vested and perfected rights; nor is the statute an *ex post facto* one, nor one having a retro-active effect. It relates to the *future regulation* of railroads generally. It provides that *all* railroads shall thereafter have suitable cattle-guards, unless positively excused by the railroad commissioners, and is obnoxious to none of the objections urged against retrospective statutes, and to no other conceivable objection. Something may be learned, too, with regard to the intent of the legislature, by looking at other parts of the statute. The first and second sections speak of railroad companies *which shall thereafter be incorporated,* while the third section omits this qualification, and declares that *all* railroad companies, unless positively excused by the commissioners, shall make and maintain suitable cattle-guards. And, we ask, why should not *all* be required to do it if any of them are? Why should any distinction be made, when all are alike subject to public control, and alike need to be regulated for the public good?

It is said that if we so apply the third section of the act, we make it inconsistent with the earlier act of the same session on the same subject. So we shall in any event, for the lat-

ter is meant to be more comprehensive than the former; and on this ground we are doubtless to account for the double action of the same legislature on this subject. In the first, it is provided that all railroad companies shall make suitable cattle-guards, whenever *ordered* to do so by the railroad commissioners; in the second, all railroad companies are required to construct them in all cases where they are not *positively excused* by the commissioners.

Giving then this third section the application to the defendants which we do, and which the superior court did, there seems to be very little left for our consideration, for the jury have found that there was no want of care on the part of the plaintiff which conduced to the injury sustained by him, and that it was attributable to the neglect of the defendants to provide the cattle-guards required by the act of 1850.

The defendants asked the court to charge the jury, that, upon certain admitted facts which are detailed in the motion, the plaintiff's cows were to be regarded as suffered to go at large, contrary to the act of 1855, and that so the plaintiff was in fault, and could not recover. We are not satisfied that the defendants could make a question of law on these facts by detailing them as they have done. It appears to us to be the mere recital of evidence which conduces to prove the fact in dispute, and not a question of law or principle for the court. But, however this may be, we think the judge in his charge took a correct view of the facts, and left the proper question upon them to the consideration of the jury.

The defendants have no reason to complain that the evidence which they offered to prove that the railroad commissioners had entertained or expressed an opinion that cattle-guards were not necessary, at the place where these cattle entered upon the road, was held not to be conclusive; it was scarcely admissible, and certainly nothing more.

A new trial is not advised.

In this opinion the other judges concurred; except Sanford, J., who having tried the case in the court below, did not sit.

New trial not advised.