May Term,
**1859.**

THE NEW
ALBANY, &C.,
RAILRO'D CO.
v.
TILTON.

------

## THE NEW ALBANY AND SALEM RAILROAD COMPANY *v.* TILTON.

Service of process upon a conductor of a railroad train is sufficient to compel the appearance of the company.

In the enactment of the statute touching animals running at large (1 R. S. p. 102), the legislature contemplated the promotion of agricultural interests rather than the protection of railroad property.

The statute regulating the fencing of railroads (Acts of 1853, p. 113), is in the nature of a police regulation, by which railroad companies are required to fence their roads, or to hold themselves liable, to a certain extent, for animals injured for the want of such fences. It is not so much a measure of protection to the owners of such animals, as it is a regulation for the safety of passengers; and the legislature possesses the power to incorporate such a provision in a charter or general law authorizing the formation of companies; and, looking to the protection of human life, such a regulation may be prescribed, as in this case, after the road has been constructed, even where the company's charter is not amendable, without interfering with vested rights, or violating a contract.

APPEAL from the *Pulaski* Circuit Court.

HANNA, J.—This was an action commenced before a justice of the peace by *Tilton*, to recover of the appellant the value of a mare, alleged to have been killed by the locomotive, &c., of said company.

There was a recovery of 100 dollars before the justice, and also for the same amount in the Circuit Court upon appeal.

There is no allegation in the pleadings of negligence; nor was there any evidence upon the trial upon that point; nor was there any evidence of any order, under the statute, of the county authorities, in relation to the kind of animals that should be permitted to run at large.

May Term,
1859.

THE NEW
ALBANY, &C.,
RAILRO'D CO.
v.
TILTON.

The suit was evidently instituted under the act of *March* 1, 1853, copied at large in *The Madison, &c., Co.* v. *Whiteneck*, 8 Ind. R. 218.

The main point argued in this case is, as to whether the act referred to is constitutional.

Before proceeding to the examination of that question, we will dispose of some others that are raised and argued, although heretofore either directly or indirectly decided.

*First.* It is insisted that the service of a notice of the day of trial on a conductor of a train, was not such service as should compel the appearance of the defendant, although the statute expressly provides therefor.

In addition to the reasons given in *The New Albany, &c., Co.* v. *Grooms*, 9 Ind. R. 243, sustaining such service, we might say, that the policy of our system of jurisprudence requires that the party to be affected directly by a judgment, should, in some form, have notice of the pendency of proceedings in a Court of justice, which might ultimately result in such a judgment. Where the proceedings are against a natural person, the best mode, and therefore the one that should be adopted where it can be, keeping the ends of justice to both parties in view, is, by personal service; but as to one of those impalpable and imperceptible bodies, known as artificial persons, or bodies corporate, such a rule cannot prevail; for a service upon a director, an officer, or an agent of such an institution, could not, in point of fact, be said to be a service upon the person sued—the artificial person before then created by the law. The power that created and breathed into being such a person, ought to, and in our opinion does, possess the right to prescribe the mode of bringing such persons to the bar of judgment.

*Second.* That proof ought to have been made by the plaintiff that the animal, for the killing of which suit was brought, was such an one as, by order of the board of commissioners of that county, was permitted to go at large. 1 R. S. p. 102.

The most that can be said in reference to the necessity of such an order and the proof thereof is, that domestic

animals which are, in the absence of such order, permitted by their owner to pass off his premises on to the premises of another, or on to a public or private way—in a word, to run at large—are trespassers. Whether such a position is correct or not, we shall not examine, for the reason that, in our view, such proposition might be conceded, and yet the company would be liable in the case at bar.

In the argument, this question is treated as one affecting the rights of the parties to this suit alone. This is too circumscribed a view of the intention of the law-making power in the enactment of the statutes regulating the fencing of railroads, and in reference to animals running at large. It is clear from the context of the latter statute, that the legislature, by its enactment, was looking more to agricultural interests than to the protection of railroad property.

The former statute is, in our opinion, in the nature of a police regulation. By its terms, railroad companies are required to fence their roads, or hold themselves liable, to a certain extent, for animals injured for the want of such fences. The legislature certainly possessed the power to incorporate such a provision in a charter, or in a general law authorizing the formation of companies. Such power has been heretofore exercised and sustained in *New York*. Laws of 1850, p. 233.—*Corwin* v. *The New York, &c. Railroad Co.*, 3 Kernan, 42.

Here, our legislature did not incorporate the regulation in the charter of the appellants, but, after the construction of the road, attempted to prescribe it. It is insisted that by the act additional and heavy burdens are attempted to be fastened upon the company; that it is in reality an alteration of the charter, when it was provided in the original charter that no alteration should be made, &c. (Local Laws of 1848, p. 456); in a word, that the act is unconstitutional, because it interferes with vested rights, and impairs the obligations of a contract. It is assumed that the act of the legislature granting to the appellants certain franchises, and the acceptance of the act and exercise of the franchises by the company, are a contract.

May Term,
1859.

THE NEW
ALBANY, &c.,
RAILRO'D Co.
v.
TILTON.

We shall not stop to inquire into the rights, or rather to limit our inquiry into the rights and remedies which exist as between the company and the owner of an animal that might chance to be injured on the road, or the power of the legislature to prescribe rules in reference thereto, if his rights were alone involved. The stockholders of a railroad company may have large amounts vested in the enterprise, and those who avail themselves of that mode of transporting property, from point to point, might likewise risk large amounts in value aboard the cars of such company. Whilst the business of the company should be confined to the transportation of property alone, the power of the legislature to impose new and additional burdens regulating such manner of transportation may be, in our opinion, in some instances questioned, where no serious question could arise as to the exercise of that power if the company should undertake to transport passengers. This arises out of the fact that the preservation of the life and limb of the citizen is, by the law, regarded as of more consequence than the protection of his property. When power is granted to organizations to prepare ways for carrying passengers from point to point, with great celerity, but by the application of a propelling agent of known danger and almost irresistible force, it would appear but reasonable that a right should be lodged somewhere to maintain over such organizations a supervisory control, by which they might be compelled, under penalties, to adopt approved means, when discovered, of lessening the great danger arising from the use of such agent and mode of conveyance. Such would be a police regulation—a regulation for the protection of the public. It is but the application of the principle that he who possesses a right shall exercise it in a manner the least detrimental, injurious, or dangerous to his neighbor. The penalty under the regulation, in the case at bar, is the payment to the owner of the value of the animal killed. It is, in that respect, better calculated to accomplish the desired end, than a fine paid to the public might be. To the company it is the same, whether the individual or the public should receive

that amount; but to others it is different; the reception by the owner, of the value of his property, is intended to prevent heart-burnings and disputes, and to check the outburst of angry passions, in a form that might be disastrous to human life, by the perpetration of malicious mischief to the work itself. See *The Madison, &c., Co.* v. *Whiteneck*, 8 Ind. R. 230; *Corwin* v. *The New York, &c., Co.*, 3 Kern. 42; *Fawcett* v. *The York, &c., Railway Co.*, 2 Eng. L. and E. 289; *The Jeffersonville, &c., Co.* v. *Applegate*, 10 Ind. R. 49.

May Term, 1859.

THE NEW ALBANY, &C., RAILRO'D CO.
v.
TILTON.

By the first and second sections of the act of congress of 1847, the number of passengers to be taken on board certain vessels to be carried to or from the *United States*, is fixed in proportion to the space to be occupied. As a penalty for a violation of the law, the master of the vessel is subject to a fine of 50 dollars for each passenger over, &c.; and if the excess is more than twenty, the vessel to be forfeited to the *United States*.

In the case of *The United States* v. *The Brig Neurea*, 19 How. 95, it is said that "the object of the act in question is the protection of the health and lives of passengers from becoming a prey to the avarice of ship owners." There is no intimation that the act is invalid, but to the reverse, the information was sustained. If we are correct, the object of this statute is, among other things, to prevent the lives of passengers from becoming a prey to the avarice of railroad owners.

By the act of congress of *July* 7, 1838, entitled " An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," it is declared that, " It shall be the duty of the master and owner of every steamboat, running between sunset and sunrise, to carry one or more signal lights, that may be seen by other boats navigating the same waters, under the penalty of 200 dollars." This act has been held, in all its provisions, obligatory upon the owners and masters of steamers navigating the waters of the *United States*, &c. *Waring* v. *Clarke*, 5 How. 465.

Thus it is seen that the right of the individual citizen to

engage in the business of carrying passengers to or from ports of the *United States*, and upon the waters of the *United States*, in boats propelled by steam, is restrained and regulated by statutes. Suppose, in the first cases cited, owners had vested large sums in the construction of vessels, destined to the business of carrying passengers, before the passage of the statutes, and that thereby the number that might otherwise have been conveyed, and the profits that might have accrued, were reduced one-third. Would not such enactment have been as much an infringement of individual rights—as much an interferance with legitimate business—as could arise under the enactment now in question. In point of fact it would be, and the only reason, we conceive, that can be even plausibly urged, to strike down the one enactment while the other is sustained, would be upon the ground that the legislature, by the enactment authorizing the construction of the road, divested itself, and all future bodies of like character, of the power to make regulations to insure the safety of passengers upon such road.

One of the "unalienable rights" of man is the "pursuit of happiness," included in which, as generally understood, is the right to acquire and quietly enjoy property. Yet by these acts of congress, this unalienable right to acquire property is, to a certain extent, infringed; the right of the individual is treated as secondary and subordinate to the general welfare.

If the legislative body possesses the power to regulate the enjoyment, by the citizen, of an unalienable right, we cannot well conceive how such body could grant to a few of the citizens of the state, when organized into a body politic, rights of a higher dignity or more sacred character than those generally recognized as unalienable.

Viewing in this light the questions involved in the case at bar, we are, we repeat, clearly of opinion that the statute should be considered as a police regulation, and, as such, is valid and binding upon all railroads, whether constructed under charters granted before or after its publication.

*Per Curiam.*—The judgment is affirmed with costs.

*W. G. Cooper*, for the appellants (1).

*D. D. Pratt*, for the appellees.