May Term,
1861.

Indianapo-
lis, &c.
Railroad Co.
v.
Kercheval.

16    84
161   133

THE INDIANAPOLIS AND CINCINNATI RAILROAD COMPANY v.
KERCHEVAL.

The laws providing compensation to the owners of animals killed or injured
by the cars of any railroad company are police regulations, which the
Legislature had the right to impose upon existing corporations, as well as
upon those thereafter to be formed.

There is nothing peculiar in the charter of the *Indianapolis and Cincinnati
Railroad Company* which would prevent the Legislature from requiring
her to pay for the killing of animals upon her road, in default of keeping
it fenced.

The cost of making and keeping the fences in repair, or the amount paid in
the way of damages for stock killed, does not "detract from or affect the
profits of the corporation," in the sense intended by her charter.

The act of 1853 (Acts 1853, p. 113), authorized suit to be brought before a
justice of the peace only, and hence the recovery was limited to $100.;
but by the amendatory act (Acts 1859, p. 105), where the damages
exceed $50, the party may bring his suit in the Circuit or Common Pleas
Court, and recover the value of the animal killed, or the amount of the
injury inflicted.

The act of 1859 is prospective, only, in its operation, and hence only applies
to animals killed or injured after the passage of the law.

*Tuesday,
May 28.*

APPEAL from the *Decatur* Common Pleas.

WORDEN, J.—This was an action brought in the Court of
Common Pleas by *Kercheval*, against the railroad company,
to recover the value of three horses killed by the cars of the
defendant upon her railroad track, the road not being fenced.
The action was based upon the statute of 1853, making rail-
road companies liable, without negligence, for stock killed or
injured by the locomotive, &c. of the company, unless the
road is properly fenced, and the act amendatory thereof,
approved *March* 4, 1859. There is no charge, or proof, of
negligence on the part of the company. It was alleged and
proven that three horses were killed in *November,* 1858.
Trial, finding and judgment for the plaintiff for $375. The
company appeals.

Two questions are presented by the record, and elaborately
discussed by counsel on both sides, which may be stated as
follows: 1. Are the acts above alluded to constitutional and
valid as against this company? 2. Should the amendatory

act of 1859, if valid, be construed retrospectively, so as to authorize the present suit?

We will consider these questions in their order.

The appellant was chartered in 1848; but in the case of *The N. A. & S. Railroad Co.* v. *Tilton*, 12 Ind. 3, it was held by this Court that railroad companies chartered previously to the passage of the laws in question have no immunity from their operation; that the laws were police regulations which the Legislature had the right to impose upon existing corporations. Whatever doubt there may formerly have been on this subject, it seems now to be settled that such enactments may constitutionally bind companies chartered before the passage of the laws, because they are not considered as impairing the obligation of contracts, or interfering with vested rights. Red. on Railways, p. 549, and notes. In the case of *Thorpe* v. *Rutland and Burlington Railway*, 27 Vt. R. 140, cited by Judge *Redfield*, the subject is very fully considered, and the conclusion arrived at that the power to impose such laws was a police power, which resides in the law-making power in all free States, and of which the Legislature can not divest itself even by an express grant to any private or public corporation. "This police power of the State," say the Court, "extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim *sic utere tuo ut alienum non laedas;* which being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others."

There is a provision in the appellants' charter, however, upon which she relies to exempt her from the operation of these statutes, which, perhaps, should be noticed. It is as follows: " When said corporation shall have procured a right of way as herein before provided, they shall be seized in fee simple of the right to said land, and shall have the sole use and occupation of the same; and no person, body corporate or politic, shall in any way interfere therewith, molest, disturb, or injure any of the rights and privileges hereby granted, or that would be calculated to detract from, or affect, the profits of said corporation."

May Term,
1861.

INDIANAPO-
LIS, &c.
RAILROAD Co.
v.
KERCHEVAL.

We see little or nothing in the above section of the charter, after providing for the title and occupancy of the land, except a legislative assurance that the rights and privileges thereby granted should not be interfered with; that nothing should be done which would detract from or affect the profits of the corporation. All these would probably have been the rights of the corporation without any such express legislative declaration; on the principle that the charter is an inviolable contract, except so far as the power of amendment or alteration is reserved. The statutes under consideration do not interfere with, or violate, that provision of the charter which stipulates that nothing shall be done which would detract from or affect the profits of the corporation. How a requirement that the company shall fence her road or pay for stock killed upon it, can detract from, or affect the profits of the corporation, the counsel for the appellant has not informed us. We suppose, from the language of the charter, that the Legislature intended to provide that nothing should be done to interfere with the enjoyment by the company of her corporate franchises; nothing to prevent her from using her road and making the profits to be derived therefrom. It certainly was not intended by the provision in question to tie up the hands of a future Legislature, so that no provision could be made by law requiring the company, for the safety of the public, to furnish safe rolling machinery, or even to adopt such new improvements as experience may have shown to be necessary for, and conducive to, safety in traveling by railroad, although this could only be done at an expense to the company. Nor was it intended to prevent a future Legislature from imposing penalties upon the corporation for a breach of laws regulating the manner of running trains upon the road, although such penalties might "detract" from the profits.

Such construction would render nugatory, so far as this corporation is concerned, the statute authorizing an action to be brought against an individual or a corporation, for the death of a person caused by the wrongful act of another, as the damages would "detract" from the profits of the corporation. _Vide_ 6 Ind. 146.

We find nothing peculiar in the charter of the appellant

which prevents the Legislature from requiring her, in common with other railroad companies, to pay for the killing of animals upon the road, in default of keeping it fenced. The cost of making and keeping in repair the fence, or the amount paid in the way of damages for stock killed, does not, in our opinion, "detract from, or affect the profits," of the corporation in the sense meant by the terms of the charter. Hence, the law is with the appellee upon the first question. *The Newcastle and Richmond Railroad Co.* v. *The Peru and Indianapolis Railroad Co.*, 3 Ind. 464.

We come now to the second question.

The act of 1853 (Acts, 1853, p. 113) authorized suit to be brought, under the provisions thereof, before a justice of the peace only. *The Evansville and Crawfordsville Railroad Co.* v. *Ross*, 12 Ind. 446. Hence, the right of recovery was limited to $100, the extent of the justice's jurisdiction. *The Madison, &c. Railroad Co.* v. *Whiteneck*, 8 Ind. 217. The amendment (Acts 1859, p. 105) provides, that where the value of the animal or animals killed shall exceed $50, the party may prosecute his claim before a justice, or in the Common Pleas, or Circuit Court, and recover the value of the animal or animals destroyed, or the injury inflicted. Now, this amendment does two things. It gives the party a different remedy from the one furnished by the old statute, when the property exceeds $50 in value; that is, it gives him a choice of courts. It also gives him an additional right, where the property exceeds $100 in value; for now he can recover the value of the property, by suing in the Common Pleas or Circuit Court, whereas, under the old law, he could only recover $100, whatever may have been the value of the property. The amendment then, in one sense, confers an additional right not given by the old statute; and we must determine whether it was intended as a new rule for future cases, or whether it was intended to be retroactive, and apply to animals killed before its passage.

The animals sued for were killed in 1858, when there was no law in force by which the plaintiff could have recovered more than $100; but if the amendment is to apply to this case, the recovery of $375 must be sustained.

May Term,
1861.

INDIANAPO-
LIS, &c.
RAILROAD CO.
v.
KERCHEVAL.

We pass by the question of power in the Legislature to enact retrospective laws. Such power undoubtedly exists in a great variety of cases, and probably in the present case. In *Andrews* v. *Russell*, 7 Blackf. 474, a retrospective act was sustained, which gave a party a right of action where he had none before; which operated upon an existing void contract, and made it good. The question here, is not whether the Legislature have such power, but whether they have exercised it. In construing the amendment in question, the character of the legislation should not be lost sight of. It has been said by this Court, in speaking of the act of 1853: "This act is not to be applied to cases not clearly within its provisions. It is in derogation of common right, and highly penal in its character. At common law, proprietors of land are not bound to fence against each other, but each is bound to keep his cattle on his own land." *The Indianapolis and Cincinnati Railroad Co.* v. *Kinney*, 8 Ind. 402.

The language of the amendment, so far as it indicates any legislative intent in respect to the question now under consideration, is as follows: "That whenever any animal or animals *shall be* killed or injured by the cars or locomotives, or other carriages, used on any railroad in this State, the owner thereof may go before some justice of the peace," &c. The language here employed seems to be clear and explicit. The amendment applies only to such animals as "shall be" killed. "Shall be," clearly indicates the future, and not the past. There is nothing in the amendment which indicates, so far as we can discover, an intent on the part of the Legislature to make it retrospective, and embrace animals previously killed. This Court has, in two instances at least, indicated the rule of construction in this respect. Thus: "It is a well settled principle of law, that the Courts are to give statutes a prospective operation, where there is nothing indicating a different intention on the part of the Legislature which enacted the statutes." *Pritchard* v. *Spencer*, 2 Ind. 486. Again: "Statutes are to be considered prospective, unless the intention to give a retrospective operation is clearly expressed; and not even then, if, by such construction, the act would divest vested rights." *The Aurora, &c. Turnpike Co.* v. *Holthouse*,

May Term,
1861.

INDIANAPO-
LIS, &c.
RAILROAD Co.
v.
KERCHEVAL.

7 Ind. 60. The counsel for the appellee has cited two cases upon this point. The first is *Lewis* v. *Brackenridge*, 1 Blackf. 220. This case decides that where bail have become fixed, and have no further time, the right of a judgment creditor to his debt from the bail is a ·vested right, arising *ex contractu;* of which right, no subsequent legislation can deprive him. This case throws very little, if any, light upon the question of construction before us. The other is the case of *Graham* v. *The State*, 7 Ind. 470. In this case, no question of construction was raised or discussed. The question decided was simply whether the Legislature *had power* to give a right of action to an administrator *de bonis non*, upon the bond of his predecessor, executed before the passage of the law. · It was held that as it was a mere question of remedy, the Legislature had such power.

A few other cases, that have more or less bearing on the question before us, may be noted. The limitation law of 1843 was held to be retrospective. "The language," observe the Court, "of the act of 1843 on the subject, is not uniform. In one, place it is, 'after the cause of action shall accrue;' in another, 'after the accruing of the cause of action;' in others, 'after the cause of action shall have accrued.' We suppose the Legislature intended to embrace all cases, both before and after the taking effect of the act." *Prichard* v. *Spencer*, *supra*. We may observe that there is no such diversity of language in the act under consideration. In *Andrews* v. *Russell*, *supra*, R. S. 1843, § 29, p. 591, was held to be retrospective. That section provides that "No contract or assurance for the payment of money with interest, or upon which interest *has been* received, contracted for, taken or reserved, after a greater rate than is allowed by the preceding sections of this article, shall be thereby rendered void," &c. The law previous to that of 1843 fixed the same rate of interest as that of 1843; but usury under the former law, as had been determined by this Court, rendered the contract void, and no action could be maintained upon it. The language of the statute of 1843 seems clearly to have justified the construction. The Legislature evidently intended to make good, for the principal sum, contracts upon which

illegal interest *had been* received, contracted for, &c. There is no similarity between the language of the statute of 1843 and that under consideration. We may, in passing, observe that the cases of *Maguire* v. *Nowland*, 2 Blackf. 76, and *The Aurora*, &c. *Turnpike Company* v. *Holthouse*, *supra*, afford examples of a prospective construction.

This subject has been thoroughly considered in a recent case decided in England. *Moon* v. *Durden*, 2 Wels., Hurls. & Gord. 21. By an act which received the royal assent on *August* 8, 1845, it was provided that "all contracts and agreements, by way of gaming or wagering, shall be null and void; and that no suit shall be brought *or maintained*, in any Court of law or equity, for recovering any sum of money or valuable thing alleged to be won upon any wager, or which shall have been deposited in the hands of any person to abide the event upon which any wager shall have been made." It was held by all the Court, except *Platt*, B., who dissented, that the statute had not a retrospective operation, so as to defeat an action for a wager, commenced before the statute passed.

The dissenting opinion of *Platt*, B., furnishes as strong an argument against a retrospective construction of our statute, and one that is directly applicable, as if he had concurred with the majority of the Court. His opinion was, that the language, "No suit shall be brought *or maintained*," cut off suits then pending. He says: "In confirmation of the view which I have taken of the eighteenth section, (the one above set out,) it should be observed that the expressions 'Shall have been deposited,' and 'Shall have been made,' appear to have been selected in contradistinction to the words 'shall be.' If the section was intended to operate prospectively only, the words 'shall be' would have been appropriate to its object; but if retrospectively, the words 'shall have been' would be not only appropriate, but necessary."

We have seen that the language of the amendatory statute under consideration is, "Whenever any animal or animals shall be killed," &c.; and we think, both on principle and authority, it should be held to be prospective only,

and not applicable to animals killed before the act took effect.

It follows that the action can not be maintained.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*J. S. Scobey,* for the appellant.

*Will. Cumback,* for the appellee.

NOTE.—*Davison,* J. was absent.