KANSAS PACIFIC RLY. CO. V. JEROME MOWER.

1. STOCK KILLED BY RAILROADS; *Act of 1874 is Valid.* Chapter 94 of the Laws of 1874, relating to the killing or wounding of stock by railroads, is constitutional and valid.

2. POLICE POWER OF STATE; *Fencing Railroad Tracks; Legislative Exercise of Power.* Under the general police power of the state, the legislature has the power to require railroads to fence their tracks, and to make them liable for the value of all stock killed by their trains in consequence of a failure to so fence.

3. ———— The police power of a state, properly exercised, aims to regulate the intercourse of citizen with citizen, to prescribe the manner of using one's property, and pursuing one's occupation, so as not to trespass on the property or rights of others. Police is, in general, a system of precaution, either for the prevention of crimes, or of calamities.

4. RAILROAD CHARTERS; *Claim of Vested Rights.* A charter granted to a railroad corporation by the territorial legislature does not confer nor secure rights beyond the reach of the police power of the state. The chartered rights of a corporation are not more sacred than the individual's rights of person and property, and all must give way to any legitimate exercise of the police power of the state.

5. ATTORNEY-FEES; *Actions for Killing Stock.* Section 2 of said chapter 94 of the laws of 1874, giving "a reasonable attorney-fee" to the plaintiff, in case of a recovery, for the prosecution of his suit against a railroad corporation for the value of stock killed or injured, is constitutional. Such provision may seem harsh or rigorous; but it is in the nature of a penalty, and is not beyond the power of the legislature.

*Error from Shawnee District Court.*

ACTION by *Mower,* to recover from the *K. P. Railway Company* the value of a steer and a heifer killed by defendant's cars. The action was tried by the court, without a jury, at the December Term 1874. The facts were agreed to by the parties, as follows: "In May 1874, a locomotive drawing a train of defendant's cars, and run by the employés of said company, struck and killed the steer and heifer mentioned in plaintiff's petition, near Silver Lake station, said animals then being the property of *Mower.* The railroad was not fenced

at the place where said animals were killed.    The defendant is not chargeable with negligence other than such as the law implies from the facts herein stated.    More than thirty days before the commencement of this suit, plaintiff demanded of the ticket agent of defendant at said Silver Lake station, that the defendant pay him the full value of said animals, to-wit, $45.    The value of said animals at the time of the killing was $39, and a reasonable attorney-fee for the prosecution of this action for plaintiff is $25."    From these facts, the court, as conclusions of law, found that the plaintiff was entitled to recover from the defendant the sum of $39 damages and $25 attorney-fee, in all $64, and costs, and rendered judgment accordingly.    The *Railway Co.* brings the case here on error.

*E. W. Dennis,* and *Charles B. Smith,* for plaintiff in error.

*N. C. McFarland,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: In this case the constitutionality of the following act is challenged, and this is the only question presented for our consideration:

CH. 94, LAWS OF 1874.—An act relating to killing or wounding stock by railroads.

*Be it enacted by the Legislature of the State of Kansas:*

SECTION 1. Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each and every animal killed, and all damages to each and every animal wounded, by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not.

SEC. 2. In case such railway company or corporation, or the assignee or lessee thereof, shall fail for thirty days after demand made therefor by the owner of such animal, or his agent or attorney, to pay such owner, or his agent or attorney, the full value of such animal if killed, or damages thereto if wounded, such owner may sue and recover from such railway company or corporation, or the assignee or lessee thereof, the

full value of such animal, or damages thereto, together with a reasonable attorney-fee for the prosecution of the suit,. and all costs in any court of competent jurisdiction in the county in which such animal was killed or wounded.

SEC. 3. The demand mentioned in section two of this act may be made of any ticket-agent or station-agent of such railway company or corporation, or the assignee or lessee thereof.

SEC. 4. In all actions prosecuted under this act, it shall be the duty of the court, if tried by the court, or jury if tried by a jury, if the judgment or verdict be for the plaintiff, to find in addition to their general finding for plaintiff. the amount if anything allowed for an attorney-fee in the case.

SEC. 5. This act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on such road.—Approved, February 27, 1874.

We have been favored with several briefs upon this question, both from counsel for plaintiff in error, and counsel representing other railroads. There are quite a number of cases in this court in which various roads are interested, turning upon this question, and we are informed that there are many more in the several district courts waiting for the decision in this. While the amount in controversy in each of these cases is small, yet the number of cases already in suit, and the still greater number which in the ordinary experience of the management of railroad trains may be expected to arise in the future, render the question one of considerable moment. It is generally conceded by the counsel, and we think is both settled by the authorities and resting in sound reason, that the legislature has the power to require railroad corporations to fence their tracks, and to make them liable for the value of all stock killed by their trains in consequence of a failure to so fence. See as authorities: *Fawcett v. The Y. & N. M. Rly. Co.*, 2 Eng. L. & E. 289, and the adjudications of eleven American states, as follows: CONNECTICUT: *Bulkley v. N. Y. & N. H. Rld. Co.*, 27 Conn. 479; NEW HAMPSHIRE: *Dean v. Sullivan Rld.*, 2 Foster, 316; *Cornwall v. Sullivan Rld.*, 8 Foster, 161; *Smith v. Eastern*

*Rld. Co.*, 35 N. Hamp. 356; VERMONT: *Thorpe v. Rutland & Burlington Rld. Co.*, 27 Vt. 140; *Nelson v. Vt. & C. Rld.*, 26 Vt. 717; NEW YORK: *Corwin v. N. Y. & Erie Rld. Co.*, 13 N. Y. 42; *Statts v. Hudson River Rld. Co.*, 3 Keyes, 196; *Waldron v. Rensselaer & Saratoga Rld. Co.*, 8 Barb. 390; *Bruce v. N. Y. Cent. Rld. Co.*, 27 N. Y. 269; PENNSYLVANIA: *Pennsylvania Rld. Co. v. Riblet*, 66 Penn. St. 164; ILLINOIS: *Ohio & Miss. Rld. Co. v. McClelland*, 25 Ill. 140; *Same v. Brubaker*, 47 Ill. 462; INDIANA: *M. & I. Rld. Co. v. Whiteneck*, 8 Ind. 217; *Indianapolis Railroad Co. v. Kercheval*, 16 Ind. 84; *Indianapolis Rld. Co. v. Marshall*, 27 Ind. 300; *Same v. Townsend*, 10 Ind. 38; *New Albany Railroad Co. v. Tilton*, 12 Ind. 3; IOWA: *Jones v. Galena Railroad Co.*, 16 Iowa, 6; WISCONSIN: *Blair v. Milwaukee Railroad Co.*, 20 Wis. 254; MISSOURI: *Gorman v. Pacific Rld. Co.*, 26 Mo. 441; *Trice v. Hannibal & St. Jos. Rld. Co.*, 49 Mo. 438; MAINE: *Norris v. Androscoggin Rld. Co.*, 39 Me. 273. This power is sustained as a part of the police power of the state, a power whose limits are perhaps as illy defined as any power claimed or exercised by the state. "It is much easier," says Ch. J. Shaw, in *Com'lth v. Alger*, 7 Cush. 84, "to perceive and realize the existence and sources of this power, than to mark its boundaries, or prescribe limits to its exercise." It aims to regulate the intercourse of citizen with citizen, to prescribe the manner of using one's property, and pursuing one's occupation, so as not to trespass on the property or rights of others; and as such, is a power whose necessity and uses grow with the increasing complexities of our civilization, and the increasing diversities in the industries and modes of life. The sphere therefore of its operations is ever widening. Every new use to which the forces of nature are put, calls for a new interference of this power, that such use may not operate to the injury of others. Probably no single agency has made so large a demand for the exercise of this power as the agency of steam in locomotion. It is by virtue of this power that the state has assumed to regulate the speed of trains, to require flagmen at crossings of streets in popu-

lous cities, the blowing of a whistle or the ringing of a bell at places of supposed extra danger, and the erection of conspicuous sign-boards at all crossings of highways, and indeed all the other various measures to secure safety in the necessarily dangerous matter of running railroad trains. In the exercise of the same power the legislature can require railroad corporations to fence their tracks. As police is, according to Jeremy Bentham, "in general a system of precaution, either for the prevention of crimes, or of calamities," so, to prevent the injuries which might result to a train full of passengers thrown from the track by a stray animal upon it, a calamity of not infrequent occurrence, the general judgment of the public has declared that the track should be fenced, and the state has cast the duty of fencing solely on the corporation, the running of whose trains gives rise to the danger. It is said by Cooley in his work on Constitutional Limitations, p. 579, that this power "has been sustained on two grounds: first, as regarding the division fence between adjoining proprietors, and in that view being but a reasonable provision for the protection of domestic animals; and second, and chiefly, as essential to the protection of persons being transported in the railway carriages." So, in *Trice v. Hannibal & St. Jo. Rld. Co.*, 49 Mo. 438, it is said, "While the protection of property of adjacent proprietors is an incidental object of the statute, its main and leading one is the protection of the traveling public. To insure such protection, *railroads are imperatively required to fence their tracks*, and the penal liability deemed necessary to enforce this requirement, is a matter of legislative discretion." In *Ohio & Miss. Rld. Co. v. McClelland*, 25 Ill. 140: "When the safety of persons and property both demand the fencing of these roads, it is no more than the exercise of a reasonable police regulation *to require it*, and to impose adequate penalties to secure a compliance." In *Blair v. Milwaukee, &c., Rld. Co.*, 20 Wis. 254: "Experience had shown that it was entirely insufficient for the protection of the public to leave the building and maintaining of these fences, so as to prevent such intrusion upon the track, to the

sense of duty or interest of the multitudes of proprietors of lands adjoining our long lines of railroads. To remedy this evil, and insure the safety of the traveling public so far as possible in this respect, the act·in question was passed making it *the sole and absolute* duty of all railroad companies to fence and provide their roads with suitable cattle-guards."

But say counsel, this law does not come within the scope of those decisions—is not the exercise of that power. That power may impose the duty of fencing the road upon the company, and punish a failure to perform this duty by liability for all injuries resulting therefrom. But here no duty of any kind is imposed. Fencing is not declared a duty; it is only held up as a means of escaping liability, and only the single liability for animals killed. "As long," say counsel, "as the railroad companies pay for the cattle they are guilty of no breach of their obligations. They can fence or not, just as they please, and the traveling public is in no way benefited." And again, "A law that lays down no rule of conduct, that neither commands nor forbids, cannot be a police regulation." While doubtless there is weight to the suggestion of counsel in this respect, we are disposed to think they overestimate its importance. We think they place too much stress on the form of the enactment, and regard it as unconstitutional legislation to do that by indirection which it is clearly constitutional to do directly. The difference between the concession of counsel, and the law, is about this: The concession is, that it is lawful to say to the railroads, you must fence, or pay for stock killed. The law is, you must pay for stock killed, unless you fence. In each case, payment for stock killed is the result; non-fencing, the condition. In each case the liability is the same, and the manner of avoiding liability the same. For, though where the command to fence is in terms expressed, a failure to fence *may* carry the liability of the company to a further reach, and a wider extent, yet it is almost the unvarying rule in such legislation to follow the command with but one expressed penalty, that of payment for stock killed. And conceding the larger

results, if the legislature has power indirectly to subject the company to more extended liabilities, has it not the power directly to impose the lesser and included liabilities? While it seems to us that that form of legislation, which counsel contends is essential to the validity of such enactment, is the better, and approaches the subject in the more correct way, because stating first and in mandatory words what the company must or at least ought to do in respect to the manner of its carrying on its dangerous business, and afterward the penalty for non-compliance, yet we are not prepared to hold a disregard of that form fatal. While generally the protection of the train and its passengers is considered the main ground upon which to sustain this railroad-fence legislation, and rightly that should be the paramount consideration, yet the protection of domestic animals, the property of adjoining proprietors, is also laid down as one of the grounds for upholding it. (See the citations heretofore made.) It seems as though our legislature had specially in thought the minor consideration. If so, it may have been because the past experience of railroad matters in this state had called more special attention thereto. Either was a proper subject for its consideration, and within its powers. Looking to the legislation of other states, we find much that is kindred in form, and yet has received the approval of the courts. In New Hampshire, at one time, there was a law in force in terms requiring railroads to fence. A commission to revise the statutes included this in their report, but the legislature struck it out, and in lieu thereof enacted that if any railroad should neglect to keep a sufficient fence, the adjoining land-owner might give notice, and then, if not built, build it himself, and recover of the company double the cost thereof. Here it will be seen that there is in terms no duty of fencing cast upon the company, and the argument is strong, from the change in the law, that the duty had been removed. Still, the court held it the duty of the company to fence, and that it was liable for the stock killed if it did not. *Dean v. Sullivan Railroad*, 2 Foster, 316. In Vermont, Gen. Stat., ch.

28, § 78, railroad companies are declared liable for all property adjacent to their roads destroyed by fire from their engines, "unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury;" and this is approved in *G. T. Rly. Co. v. Richardson*, U. S. Sup. Ct., 3 Cent. Law J. 353. In Massachusetts is a much stronger statute: "Every (railroad) corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, and shall have an insurable interest in the property upon its route for which it may be so held responsible, and may procure insurance thereon in its own behalf." Gen. Stat., ch. 63, § 101. This has been sustained in *Hart v. Western Rld.*, 13 Metc. 99; *Lyman v. B. & W. Rld.*, 4 Cush. 288; *Ross v. B. & W. Rld.*, 6 Allen, 87; *Ingersoll v. S. & P. Rld.*, 8 Allen, 438; *Perley v. Eastern Rld.*, 98 Mass. 414; *Safford v. B. & M. Rld.*, 103 Mass. 383; *Pierce v. W. & N. Rld.*, 105 Mass. 199. In the case in 98 Mass. the court say, that "The liability of this railroad is not at common law, nor dependent upon the defendant's want of care." In that in 8 Allen, "The legislature has chosen to make it a condition of the right to run carriages impelled by the agency of fire, that the corporation employing them shall be responsible for all injuries which the fire may cause." And again, in the case in 4 Cushing, "The right to use the parcel of land appropriated to a railroad does not deprive the legislature of the power to enact such regulations, and impose such liability for injuries suffered from the mode of using the road, as the occasion and circumstances may reasonably justify." A similar statute was recognized as valid in *Adden v. White Mts. Rld.*, 55 New Hamp. 413. And another was sustained in *Chapman v. A. & St. L. Rld.*, 37 Maine, 92; *Pratt v. A. &. St. L. Rld.*, 42 Maine, 579. These cases are in principle very strongly in point. An additional liability is in terms directly and absolutely imposed upon the ·company, a liability which they cannot, as in the case before us, by any means avoid, but to compensate for which they

are given an additional privilege.   If in lieu of the privileges
given by the 5th section of our statute, the companies were
given an insurable interest in the cattle along the line of their
road, the parallelism would be very close.   And this insur-
able interest is granted to the companies as the only equiva-
lent for the added burden, and it is something which they
may or may not avail themselves of.  . The burden they may
not avoid; the insurance they may use or not, as they choose.
So here, the burden is absolute; the stock must be paid for;
the fencing is discretionary, though unlike the law in Massa-
chusetts, the privilege if used will avoid the burden.   But in
Indiana we find authority still more closely in point.   Their
stock-law is, so far as any question here is involved, precisely
like ours.   It imposes the liability directly, and then declares
that the liability shall not rest upon any company that securely
fences its road.   The supreme court of that state have fre-
quently passed upon that statute, and uniformly sustained it.
See the cases heretofore cited from Indiana.   We conclude,
therefore, upon both reason and authority, that the act before
us is, as to its essential elements at least, within the scope of
the legislative power.   And that is, in this direction, the
limit of judicial inquiry.   All further questions must be con-
sidered and passed upon elsewhere.

Some minor matters are also presented which require brief
notice.   It is insisted first that this act cannot apply to the
plaintiff in error, because it holds under a charter granted
by the territorial legislature, and therefore now incapable of
change without its consent.   But the chartered rights of a
corporation are not more sacred than the individual's rights
of person and property, and all must give way to any legisla-
tive exercise of the police power of the state.   In *Nelson v.
Vt. & C. Rld.*, 26 Vt. 717, it is said, "It is certain, we think,
that the legislature cannot impose new burdens upon corpo-
rations under such circumstances, which are merely and ex-
clusively of private interest and concern, and which have
nothing to do with the general security, quiet and good order.
But there can be no doubt they have the same right by gen-

eral legislation over these corporations, which they have over natural persons. By general laws they may require them to conform to such regulations of a police character as they may deem for the security of the rights of citizens generally, and most conducive to quiet and good order, and the security of property, and even the life of animals." See also, *Thorpe v. R. & B. Rld. Co.*, 27 Vt. 140; *Lyman v. B. & W. Rld.*, 4 Cush. 288; *Pratt v. A. & St. L. Rld.*, 42 Maine, 579; *Norris v. Androscoggin Rld.*, 39 Maine, 273; *Bulkby v. N. Y. & N. H. Rld.*, 27 Conn. 479.

Again, it is said that that portion of § 2 giving to the stock-owner the right to recover attorney-fees is unconstitutional. The proposition is thus stated by the learned counsel for plaintiff in error:

"Our state constitution, (Bill of Rights, §§ 1, 18,) guarantees to all equity of rights, and remedies for injury by due course of law. We contend that a law which gives a successful plaintiff in a civil action his attorney's fees, and denies them to defendant, is a most gross violation of these constitutional provisions."

We do not think the contention of counsel can be sustained. While the law may be harsh and rigorous, (and yet its rigor may have seemed to the legislature as essential to its value, for, if a claimant for stock killed was compelled to pay his own attorney's fees, it might well happen that in all cases the amount of his claim — such amounts being uniformly small — would be consumed by attorney's fees, and so leave the claimant in no better condition than before,) we see no reason to hold it beyond the power of the legislature. It is no uncommon thing for legislatures to provide, in cases where a failure to pay seems to imply more than ordinary wrong, that such failure should carry with it something in the nature of a penalty. Sometimes double or treble damages are given. The Iowa stock-law gave double damages. Our trespass act provides for both double and treble damages; (Gen. Stat., p. 1095, §§ 1 and 2.) Ten per cent. may sometimes be added in the discretion of the court. Other illustrations might be suggested.

Some other matters are suggested, but it is unnecessary to prolong this opinion. We are of opinion that the act is constitutional, and applicable to the plaintiff in error.

The judgment will therefore be affirmed.

It is understood that the cases of the same plaintiff in error against *Israel M. Tolls*, and same against *E. J. Hopper*, and the case of the *L. L. & G. Rld. Co. v. H. M. Waters*, involve only the same question, and the judgments in those cases will be affirmed.

All the Justices concurring.