The opinion of the court was delivered by
Brewer, J.:
This was an action brought under §422 of the code of civil procedure. Petition, answer and reply were duly filed, and the case went to trial. After the plaintiff had finished his testimony, a demurrer to the evidence was sustained, judgment entered for defendant; and to reverse this ruling plaintiff in error comes to this court.
The facts are these: Plaintiff’s intestate was a fireman, employedon the L. L. & G. railroad, and while engaged in running a freight train, the train struck a steer belonging to *334 defendant, the engine and tender were thrown from the track,, and plaintiff’s intestate so injured that he died. The right of' way at the place of the injury was owned in fee simple by the railroad company, which had obtained a deed therefor from the defendant. The latter owned the land on both sides of the right of way; the railroad was unfenced; defendant was in the habit of turning his cattle loose on his own lands, and they frequently strayed on and across the railroad track. The learned counsel for plaintiff thus states the question: “The question presented is, whether one owning land on each side of a railroad, owned in fee simple, and occupied by a railroad company in the transportation by steam power of freight and passengers, (the railroad not being fenced,) may depasture his land, and with it the land of the railroad company, without liability to persons lawfully upon the trains, for injuries produced by collisions between the cattle and the trains, and without allowing the jury to pass upon the question of defendant’s negligence or wrongful omission.”
The question is a new one, in this state at least, and of no small importance. The statement presented by counsel presents the question in as fully a favorable light for the plaintiff' as the facts will warrant. It may be remarked that it is not pretended that defendant drove his cattle upon the track, or was guilty of wrong or negligence in any other way than in permitting his cattle to roam at large and in failing to fence between his land and the railroad track. Neither is it pretended that the employés in charge of the train, plaintiff’s intestate included, were any of them guilty of actual negligence in the handling of the train. The accident was unavoidable save by previous fencing- of the track, or other-means to keep the cattle off from it. Under these circumstances, was the defendant liable for the accident, or was there a question which ought to have been submitted to a jury?' The argument of plaintiff in error is substantially this, that defendant’s cattle were trespassers on the railroad track,. (Railway Co. v. Rollins, 5 Kas. 168,) and that plaintiff’s intestate was rightfully on the train and under no obligation to- *335 defendant or any one else in respect to fencing; that no statute of this state in terms commands'either a land-owner or a railroad company to fence; that as to railroads the statute simply imposes a liability of paying for stock in case the company has not fenced its track, (Compiled Laws 1879, p. 784, §30; Railroad Co. v. Mower, 16 Kas. 573;) that as to the land-owner, a failure to fence debars him from the right of recovery for damages to his crops by trespassing cattle, (Larkin v. Taylor, 5 Kas. 433;) and that these penalties and restrictions are the express and sole limit of liability; that independent of all statutory provisions there is an obligation upon both the railroad company and the land-owner to fence whenever so doing is necessary for public safety; and that while the railroad company may have been guilty of negligence in not fencing so as to keep cattle off its track at the place of this injury, the defendant was also guilty of negligence in permitting his cattle to roam at large adjacent to and upon the track of the railroad company, and that while the railroad company by reason of its negligence might not be able to maintain any action against the defendant, the plaintiff, whose intestate was guilty of no wrong and free from all negligence, may maintain this action against the defendant on account of his negligence.
We do not think this argument sound. The fencing of a railroad track is a duty required not merely for the protection of cattle, but for the protection of the lives and safety of persons on railroad trains, whether employés or passengers. The enforcement of this duty is the exercise of the police power of the state, and it may be cast by the.legislature upon either the land-owner or the railroad company, as it shall deem best. There is especial justice in casting this duty upon the railroad company, inasmuch as it chiefly profits by the use of the railroad track, and those rapid means of transportation whose very rapidity makes the presence of cattle on the track so dangerous to life and limb; and such we understand to be the purpose and scope of the statute of 187.4, chapter 94. So far as the statute respecting partition fences is concerned, (if it *336 ever had any application to the fencing of a railroad track, and as to that we express no opinion,) it was superseded by this statute of 1874; and from that time on, the duty of fencing so as to keep cattle off from the track was a duty enjoined solely upon the company. Counsel refers in his brief to the peculiar phraseology of that statute, in this, that it imposes no express command on the railroad company, but declares substantially that it must pay for cattle unless it has fenced its road. We had occasion to notice this peculiarity of the statute when first before us for consideration in the case of The Railroad Company v. Mower, supra, and in that opinion referred to the statutes of other states in which a similar form of legislation had been adopted. Nothwithstanding this peculiarity, it seems clear to us that, as between the land-owner and the railroad company, the duty of fencing, so as to keep cattle off the track, is cast exclusively upon the railroad company. Unlike the case of the Central Branch Rld. Co. v. Lea, 20 Kas. 353, the land-owner in this case violated no statute in suffering his cattle to go at large.' Whatever risk of liability he might run to the owners of fields properly fenced, or to a railroad •company whose track was properly fenced, for any depredations or injury done by his cattle, the owner of an unfenced field and a railroad company with an unfenced track were not in a position to challenge his conduct. The law had imposed upon them a duty which they must perform before they were in a position to complain of his action. Counsel does not seriously contend, but rather concedes, thatthe railroad company •could maintain no action against him; but in how much better position is the plaintiff? His intestate was not a passenger, but an employé of the railroad company, and if the employer could maintain no action by reason of his own negligence, can the employé, while engaged in his master’s business, assert a superior right? The case nearest in point which we have been able to find, or to which we have been referred by counsel, is that of Child v. Hearn, 9 Exchequer, p. 176. In that case, the facts were that the plaintiff, a plate layer in the employ of a railway company, was returning from his *337 work along its line upon a trolley propelled by hand, when the defendant’s pigs got through the fence of his field, which adjoined the railway, upon the line in front of the trolley, and the trolley ran over the pigs and was upset, and the plaintiff was injured. The fence was insufficient, and it was the duty of the railway company to maintain the fence, and it was held that the plaintiff could not maintain an action. Bramwell, Baron, in delivering the opinion, uses this language:
“The pigs then got upon the line through an insufficient fence, and caused injury to the plaintiff; and the question arises, is the defendant liable? What might happen if one of the public were injured in the use of the railway, which is a public highway, I will not say. The defendant might perhaps say: ‘ I was not bound to fence; ’ but then the plaintiff might reply: ‘There was an opening through which you knew the pigs might get out of your field upon the line; you allowed them to be in the field, and I, using the road innocently, suffered injury through their escaping upon the line.’ But however that might be, here the plaintiff was a servant of the owner of property which was unfenced through the ■owner’s default. It is manifest, as I have before said, that if the pigs got upon that unfenced property through its owner’s default, the owner could not maintain an action; and if so, it is impossible to say that a ,third person, using the property through the license of the owner and on his behalf, can. The servant cau be in no better position than the master when he is using the master’s property for the master’s purposes. Therefore, without saying anything as to the decision in Thorogood v. Bryan, it is sufficient to say that the defendant’s pigs escaped through the negligence of the plaintiff’s employer, and that having met with the accident through his ■employer’s negligence, the plaintiff can maintain no action against the defendant.”
So here, whatever rights a passenger might have under circumstances like those in the present case, we think the plaintiff, whose intestate was an employé engaged at the time in the management of the train, can have no rights superior to those of the railroad company. Therefore it follows that the ruling of the district court was correct, and there was no *338 question of negligence on the part of the defendant to be submitted to the jury, and the judgment must be affirmed.
All the Justices concurring.