### VISSCHER *vs.* THE HUDSON RIVER RAILROAD COMPANY.

Where the land of an individual was regularly taken by the Hudson River Railroad Company, under the special provisions of its charter, which was granted in 1846, and amended in 1848; five commissioners having been appointed by the supreme court, in August, 1850, by whom the damages of the owner were appraised, and all the steps necessary to perfect the title of the company, according to the provisions of its charter, were duly taken; *Held,* that the title to the land was vested in the company, and that the proceedings to obtain such title were not required to be under the general railroad act of April 2, 1850, that act prescribing a different mode of proceeding from that specified in the charter of the company.

*Held also,* that the provisions of the general railroad act are " inconsistent " with the charter of the Hudson River Railroad Company.

The supreme court has no jurisdiction to supervise or correct the doings of commissioners appointed to ascertain the damages sustained by the owners of land taken for railroad purposes, unless it is specially conferred by statute. And the statute has conferred no power on the court to entertain a motion to set aside such proceedings.

And if the court makes an order, at a special term, setting aside and vacating the certificate of assessment, and the rule entered thereon, such order is a nullity; and being wholly void, it may be impeached collaterally.

DEMURRER to reply. The complaint alleged that on the 1st day of October, 1850, and on divers other days and times between that day and the day of the commencement of this action, at the town of Greenbush, in the county of Rensselaer, the defendants, without leave, and wrongfully, entered into and upon the farm and premises of which the plaintiff then was the owner, and of which, before said trespasses by said defendants, she was possessed, situated in the town of Greenbush, and particularly described in the complaint, and then and there broke up the ground on a part or strip of said farm, about fifteen rods wide and about sixty-five rods in length, northerly and southerly through the center, or about the center, of said farm, and graded the said strip or part of said farm for the railroad of the defendants, and thereby rendered the same entirely unfit and useless to the plaintiff for farming purposes, or any other purpose, and during all the time aforesaid hindered and prevented the plaintiff from any benefit, use or enjoyment thereof, and greatly damaged and injured the land of the plaintiff adjoining thereto,

to the damage of the plaintiff of ten thousand dollars ; for which sum she asked judgment against the defendants.

The defendants, in their answer, alleged that they were a body, corporate, duly created under and in pursuance of the following acts of the legislature of the state of New-York, namely, the act passed May 12th, 1846, entitled "An act to authorize the construction of a railroad from New-York to Albany ;" the act passed March 20th, 1847, entitled "An act to amend an act entitled an act to authorize the construction of a railroad from New-York to Albany, passed May 12th, 1846 ;" the act passed February 10th, 1848, entitled "An act further to amend an act to authorize the construction of a railroad from New-York to Albany, passed May 12, 1846 ;" and the act passed February 5, 1850, entitled "An act further to amend an act to authorize the construction of a railroad from New-York to Albany, passed May 12th, 1846." That they were informed and believed that that certain piece of land lying in the town of Greenbush, in the county of Rensselaer, distinguished on a certain map annexed to the petition hereinafter mentioned by the number 83, (eighty-three,) was required to be taken for the construction and maintenance of the defendants' railroad, in said acts mentioned, and the convenient accommodations appertaining to the same; and thereupon the defendants, on the first Monday of August, 1850, presented a petition to the supreme court of the state of New-York, signed by John Thompson, their attorney, describing with convenient certainty, by a map annexed to said petition, said piece of land so required to be taken, setting forth the name and residence of the plaintiff, as the owner thereof, and only person interested therein, and praying the appointment of commissioners to ascertain the compensation to be made to said plaintiff for such taking, which petition and maps were filed in the clerk's office of said court ; and that the defendants, with such petition, did present to said court satisfactory evidence that notice of such intended application, and of the time and place thereof, had been given, at least ten days previously, to the plaintiff personally ; and the said court did hear proofs and allegations of all parties touching the regularity of said proceed-

Visscher *v.* The Hudson River Railroad Co.

ings, and on the 5th day of August aforesaid, did, by an entry in its minutes, appoint five competent and disinterested persons, to wit, James Powers, Henry De Lamater, Lewis W. Young, John G. Wilkin and William Sidney Smith, to be such commissioners, and did specify in such entry a time and place for the first meeting of such commissioners, and the said commissioners took the oath, met, heard the proofs and allegations of the parties, viewed the premises, and thereafter, without fear, favor or partiality, did ascertain the compensation proper to be made to the owners and parties interested in the said lands so to be taken, for the taking thereof as aforesaid, without any deduction or allowance on account of any real or supposed benefit or advantage which such owners or parties interested might derive from the construction of the said road, as follows : to said plaintiff, Catharine G. Visscher, the sum of two thousand and seventy-five dollars and forty cents, and also for costs, expenses and counsel fees, twenty-eight dollars, amounting together to two thousand one hundred and three dollars and forty cents, and did, on the fourteenth day of September, in the year last aforesaid, make and subscribe, and afterwards file with the clerk of the said court, a certificate of their said ascertainment and assessment, and afterwards, on the twenty-third day of September, in the year last aforesaid, the defendants deposited the last mentioned sum of money to the credit of the said plaintiff, Catharine G. Visscher, in a bank for that purpose approved by the said court, that is to say, the Farmers' and Manufacturers' Bank in the village of Poughkeepsie, she the said plaintiff having previously, and after the subscribing of such certificate on tender thereof to her duly made by the defendants, refused to accept the same last mentioned sum of money, or any part thereof; and that the defendants did afterwards, on the twenty-fourth day of September, in the year last aforesaid, present to the said court such certificate and due proof that the last mentioned sum of money had been so deposited as aforesaid, and the same court thereupon on the last named day made and caused to be entered in its minutes a rule, describing with convenient accuracy and certainty the said piece of land so required to be

taken, such ascertainment of compensation, with the mode of making it, and such deposit of the same compensation as afore-said, which rule was recorded and indexed in the office of the clerk of the county of Rensselaer, in like manner as if it were a deed of conveyance from the plaintiff to the defendants. And the defendants alleged that all and singular the proceedings above mentioned, were had and taken pursuant to, and in conformity with, the directions of the act above referred to, passed February 10th, 1848.

The defendants further alleged, that as they were informed and believed, the piece of land so required to be taken, was part and parcel of the premises described in the complaint, and the defendants admitted that since the proceedings above mentioned they had accordingly taken such piece of land for the purpose of constructing and maintaining the said railroad, as stated in the petition; but they denied that they had entered upon, broke up, graded or rendered unfit to the plaintiff, for farming or other purposes, or hindered the plaintiff from any benefit, use or enjoyment of, or greatly damaged or injured any part of the said premises described in said complaint, except as above expressly admitted. That the defendants had no knowledge of the allegations in that behalf in the complaint contained, to form a belief, and they therefore denied that the plaintiff was or is owner in fee, or otherwise, of the real property in the complaint mentioned, and they denied the damage alleged.

The plaintiff, in her reply to the answer, stated and averred, upon information and belief, that if any such proceedings were had, as were set forth in said answer, the same were irregularly taken; the commissioners appointed did not, at any time, nor did either of them, reside in the county of Rensselaer, where said premises are situated, nor was the statute of this state, passed April 2, 1850, entitled "An act to authorize the formation of railroad corporations, and to regulate the same," nor were any of its provisions, in any manner complied with by the defendants, in their alleged proceedings in taking or getting title to said land; she further stated and alleged, upon inform-ation and belief, that said alleged certificate of assessment, set

Visscher *v.* The Hudson River Railroad Co.

forth in the answer, was afterwards, and at a special term of this court, held at the court house in the city of Troy, on the third Monday of October, 1850, set aside and vacated by this court, as was also the alleged order or rule referred to in said answer, as made and entered on the 24th day of September, 1850; and that the same were so set aside and vacated after notice to the defendants, and proofs and argument on both sides, as well by the defendants as by the plaintiff; that the defendants afterwards appealed therefrom, and the appeal was quashed, and the defendants then moved to vacate the order of this court made at said special term at Troy, and after argument and proof on both sides, the last motion was denied; and the plaintiff denied, upon information and belief, that the defendants ever had, or had at the commencement of this suit, any title or right to said premises, or any right to enter thereon.

The defendants demurred to the reply, and specified for causes of demurrer, as follows, to wit: *First.* To that part of said plaintiff's reply in which she stated that "if any such proceed-- ings were had as are set forth in the said amended answer, that the same were irregularly taken; the commissioners appointed did not, nor did either of them, reside in the county of Rensselaer, where the said premises are situated; nor was the statute of this state, passed April 2, 1850, entitled an act to authorize the formation of railroad corporations, and to regulate the same, nor were any of its provisions in any manner complied with by said defendants, in their alleged proceedings in taking or getting title to said land;" because they alleged that the provisions of the said act of 1850, regulating the taking and acquiring land for the construction and maintenance of railroads by voluntary associations, incorporated under the provisions of said act, were inconsistent with the provisions of the defendants' charter, as granted and amended by the acts of the legislature of the state of New-York, and especially with the provisions of the act passed February 10th, 1848, entitled "An act further to amend an act to authorize the construction of a railroad from New-York to Albany, passed May 12, 1846," and the provisions of which were in every respect complied with by defendants, as stated in their

answer. *Second.* To that part of the plaintiff's reply in which she said "that upon her information and belief the said alleged certificate of assessment, set forth in said amended answer, was afterwards, at a special term of this court, held at the court house in the city of Troy, on the third Monday of October, 1850, set aside and vacated by this court, at said special term, as was also the alleged order or rule referred to in said amended answer, as made and entered on the 24th day of September, 1850, after notice to defendants, and proofs and arguments on both sides, as well by the said defendants as the said plaintiff; that said defendants appealed therefrom, and said appeal was quashed, and they then moved to vacate said order made at said special term at Troy, and after argument, &c. on both sides, said last motion was denied, &c., and that defendants have no title to said lands, &c.," because they alleged that the judge holding said special term, held on the third Monday of October, 1850, had no power, jurisdiction or authority to set aside, or vacate said certificate of assessment; and had no power, jurisdiction or authority to set aside, vacate or annul the said final order or rule referred to in said amended answer, as made and entered on the 24th day of September, 1850; that said final order, and all proceedings prior thereto, were now valid and effectual, and stood in full force, and entitled the defendants to said lands in fee, and that said pretended order, purporting to vacate the same, or any part thereof, was wholly null, inoperative and void; and that said judge at special term had no power, jurisdiction or authority to affirm said pretended order of the third Monday of October, 1850, but only to vacate the same as null and void; and that said order denying the application to vacate the same was also void. The defendants therefore claimed judgment and costs, and that the plaintiff should be barred from further maintaining her action against them.

*R. W. Peckham,* for the plaintiff.

*John Thompson,* for the defendants.

---

Visscher *v.* The Hudson River Railroad Co.

---

*By the Court,* PARKER, J.   The defendants were incorporated by an act of the legislature passed May 12, 1846, and amended by the act of February 10, 1848. These acts constituted the defendants' charter.   The land in question was regularly taken by the defendants, under the special provisions of such charter, five commissioners having been appointed from the state at large, in August, 1850, by whom the damages were appraised. All the steps necessary to perfect the defendants' title, according to the provisions of such charter, were duly taken.

I.   But it is claimed by the plaintiff that the proceedings to obtain the title to the land should have been under the general railroad act passed April 2, 1850.   That act prescribed a different mode for the appointment of commissioners ; and the 49th section required as follows : (*Sess. Laws of* 1850, *p.* 235 ;) " All existing railroad corporations within this state, shall, respectively, have and possess all the powers and privileges contained in this act ; and they shall be subject to all the *duties, liabilities and provisions not inconsistent with the provisions of their charters,* contained in sections," &c.   It is contended by the plaintiff that under this clause the defendants ought to have proceeded to acquire the title to the land in question, in the mode prescribed by the general railroad act, and not according to the special provisions of their charter.   These modes of proceeding were essentially different.   Under the charter, a notice to the party was to be served or published ten days. The supreme or superior court were to appoint commissioners of their own selection, and from the state at large.   The roadway might be of any width required, and on filing the report of the commissioners, the court, on proof of payment or deposit of the money, made a rule reciting the proceedings, which was recorded and operated as a deed to the company.

Under the general railroad act four weeks' publication was to be made.   The supreme court in the district had sole jurisdiction.   Each party nominated six commissioners, from whom the court selected two from each side, and appointed the fifth commissioner ; and the commissioners were all required to live in the county where the land was situated.   Notice was to be given

of an application for an order confirming the report, and an appeal was authorized, and twenty days were allowed for appealing. The roadway was limited, under the general act, to ninety feet in width.

Here are two systems, entirely inconsistent, it seems to me, the one with the other. "Consistent" means compatible, congruous, standing together or in agreement. (*Webster's Dic.*) The two modes of assessing damages and obtaining title are incompatible, incongruous, and cannot stand together or in agreement. They are entirely unlike. The requirements of the general act are not additional to those of the charter. They cannot be engrafted upon the charter. On the contrary, they would change entirely the mode of proceeding. The test on the question of "inconsistency," is this : Can the requirements of both the charter and the general act be followed out and complied with in one case? It is clear that they cannot, because they are different. Existing railroad corporations were to be subject to the general railroad act only when the provisions of that act were consistent with the provisions of the charters of such corporations; when not consistent, they were to remain unaffected by the general act. Where, as in this case, there were special provisions entirely different, the general act was not consistent with such provisions.

The clause in question was intended to apply to a great number of railroad corporations, which had been previously created, or the utility of which had been declared, without any special provisions, but with reference to the general railroad act of 1848, (*Sess. Laws of* 1848, *p.* 221,) which was materially modified by the later general railroad act of 1850. In the general act of 1848, after declaring, in the 46th section, that all existing railroad corporations, within this state shall respectively have and possess all the powers, and be subject to all the duties, liabilities and provisions contained in that act, so far as they shall be applicable to their present condition, and not inconsistent with their several charters, it was provided as follows : "All railroad companies that are now constructing their roads, may acquire title to any lands necessary for that purpose under the provisions of

Visscher *v.* The Hudson River Railroad Co.

this act." But this privilege was entirely omitted in the general railroad act of 1850, though the first part of the section is retained, and is the same which the plaintiff now claims to be applicable. If it had been supposed to be applicable, by the legislature of 1848, the latter clause would not have been inserted. And its omission in the act of 1850, indicates very plainly the intention of the legislature to confine existing corporations, in acquiring title to land, to the modes specially provided by their charters.

This same question was decided by the superior court of the city of New-York, in general term, in *The Hudson River Railroad Company* v. *Outwater*, (3 *Sandf. Sup. C. Rep.* 689,) in which case it was held that the proceedings to acquire title to land must be had under the charter, and not under the general railroad act. Upon this point therefore, I think the defendants are right, and that there was vested in them the title to the land on which it is claimed the trespasses have been committed.

II. The second question is whether the plaintiff can avail herself of the facts that an order was made at special term setting aside the proceedings, and that the court, at special term afterwards, on motion, refused to set such order aside. From the first order, an appeal was taken to the general term, but the court held there that no appeal would lie, and intimated also that there was probably no authority whatever to make the order appealed from.

The court has certainly no jurisdiction, in these railroad cases, to supervise or correct the doings of the commissioners, unless it is specially conferred by statute; and the statute has conferred no power whatever on the court, to entertain a motion to set aside such proceedings. It is like the case "*In the matter of Mount Morris Square,*" (2 *Hill,* 14,) where it was held that in confirming or setting aside reports of commissioners of estimate and assessment, in New-York street cases, the court exercises only a limited jurisdiction, which ceases the moment an order is made, one way or the other; and consequently a motion to set aside such order, either on the merits or because of irregularity, cannot be entertained. The same principle had

been previously asserted and acted upon in *Stafford* v. *The Mayor of Albany*, (6 *John.* 1; 7 *Id.* 541;) in the *Matter of Beekman-street*, (20 *Id.* 269,) and in the *Matter of Canal-street*, (11 *Wend.* 154.)

As the court acted without jurisdiction, in setting aside the rule, the order was a nullity, and being wholly void might be impeached collaterally. (*Bigelow* v. *Stearns*, 19 *John.* 39. 1 *Hill*, 130. 2 *Id.* 159.)

If the proceedings to obtain title were in strict accordance with the requirements of the defendants' charter, as they are admitted by the pleadings to be, and if the defendants were right in following the directions of their charter, instead of those contained in the general railroad act, as we have above held they were, then the defendants' title became perfect on filing and recording the rule of court made on the certificate of the commissioners, and on the deposit or payment of the moneys. The charter declares, (*Laws of* 1848, *p.* 41,) that "upon the entry of such rule, the said corporation shall become seised in fee of all lands, real estate and property described in said rule, &c. &c. and may take possession of, hold and use the same," &c. When such rule was regularly made and entered, the power of the court, conferred by the statute, was, I think, exhausted. But whether it was so or not, it is clear that the title once vested could not be divested by the subsequent action of the court, any more than an order of the court setting aside a record of a deed, on motion, could divest a title derived under and by virtue of the deed.

I think the demurrer is well taken, and that the defendants should have judgment.

[ALBANY GENERAL TERM, February 7, 1853. *Parker, Wright* and *Harris* Justices.]