Philip S. Staats and others, Executors, &c., of Jehoiakim P. Staats, Appellants, *v.* The Hudson River Railroad Company, Respondents.

The provisions of the forty-fourth section of the act of 1850, requiring railroads to maintain upon the sides of their roads fences, with openings or gates or bars therein, for the use of the proprietors of the adjoining land, is not inconsistent with any of the provisions of the special charter granted to the defendants in 1846.

That provision, in defendant's charter, permitting adjoining landowners to maintain gates or bars in fences along their road, imposed no duty upon such landowners to make such openings in such fences, and, consequently, the provisions of said forty-fourth section of the act of 1850 do not conflict with such provision in their charter..

The provisions of the railroad acts requiring the erection and maintenance of suitable fences, gates, etc., is to be considered, among other things, a safe-guard for the protection of the lives of the traveling public, and, to that extent, a police regulation.

Appeal from a judgment of the Supreme Court, in the third district, affirming a judgment in favor of the defendants, rendered upon the decision of a single judge.

The action was brought to recover the value of a horse owned by the plaintiffs' testator, which was run over by a train of cars on the defendants' railroad, and killed. The defendants' road runs through lands that were owned by the testator, and, at the time of the accident, fences were erected on each side of the road. On the evening before the injury, the horse was in a pasture adjoining the road, and during the night he escaped therefrom through a gateway (the gate being out of repair), upon the railroad track, where he was run over and killed. It was admitted on the trial that no part of the fence was out of repair, except the gate, and that there was no negligence in the management of the train. The cause was tried at the Rensselaer Circuit, in February, 1864, before a justice of the Supreme Court, without a jury. The justice decided that the defendants were under no obligation to keep the gate in repair, and, therefore, the action could not be maintained.

*Lyman Tremain*, for the appellants.

*John H. Reynolds*, for the respondents.

SMITH, J.   The only question is, whether it was the duty of the defendants to keep the gate in repair.   The plaintiffs claim, that the duty was imposed upon the defendants by the statute of 1850, known as the general railroad act, and, if not thereby, then by the eighth section of chapter 282 of the Laws of 1854, amending the act of 1850.

The 44th section of the act of 1850 expressly imposes upon all railroad corporations, to which it applies, the duty of erecting and maintaining fences on the sides of their road, with openings or gates or bars therein, for the use of the proprietors of the adjoining lands.   But it is a question whether that section is applicable to the defendants, who were an existing corporation at the time of the passage of the act of 1850, they having been chartered by a special act in 1846.   The 49th section of the act of 1850 subjects all railroad corporations within this State, existing at the time of the passage of said act, to all the duties, liabilities and provisions contained in certain specified sections of said act, including the 44th section, *not inconsistent* with the provisions of their charter. The duty created by the 44th section of the act of 1850, therefore, attaches to the defendants, unless it is inconsistent with some provision of their charter.   The defendants claim that it is inconsistent with the provisions of the 24th section of their charter, which is in these words : " The said corporation, before running any cars upon the said railroad, shall erect 'and thereafter maintain upon the sides thereof, except where the road shall intersect some public highway, a fence, of such height and strength as is by law required as a division fence between the owners of adjoining lands ; and shall make and keep in repair, wherever the same may be necessary upon the line of the said railroad, suitable guards to prevent cattle from running upon the same ; but this section shall not prevent persons owning or occupying lands adjoining the said road from erecting at proper and convenient places, where they may have occasion for crossing the said road for farming and

other necessary purposes, suitable gates in the line of said fence, to facilitate such crossing, and to be kept in·repair by the person using the same."

The argument on the part of the defendants is, that this section subjects the landowners to the duty of erecting and maintaining gates, while the act of 1850 imposes such duty upon the railroad company; aud thus the two provisions are inconsistent with each other, and, consequently, the latter does not apply to the defendants.

It is to be observed, however, that the act of 1846 does not impose upon the adjoining owner or occupant an absolute duty to erect and maintain gates. It *permits* him to erect them; and, in case he avails himself of the permission, it makes it incumbent on him to repair them. If he does not choose to erect a gate, he is under no obligation to do so, and, of course, is under no duty to repair. But the duty of the railroad corporation to erect and maintain *fences* on the sides of their road is absolute; and the adjoining landowner may insist upon its performance. If all the landowners on the line of the defendants' road had seen fit to waive the permission to construct gates given to them by the statute, as they might have done, the defendants would have been bound, by the terms of their charter, to erect and maintain a fence on each side of their road throughout its entire length, except where it intersected public highways or was inaccessible to cattle. Practically, the case would then have been the same as if the charter had not given permission to the landowners to erect gates. What new duty was imposed upon the defendants by the 44th section of the act of 1850? Simply, that the fences, which they were previously required to erect and keep up, should be constructed with gates or bars therein, when necessary to the landowners, instead of being immovable throughout. The new obligation is merely a modification of the former one — a specification of the mode, so to speak, in which the prior obligation is required to be performed. The fence required, whether with gates or without them, is but an ordinary erection for the purpose of restraining cattle from getting upon the track of the railroad; and a provision

prescribing either mode of construction can hardly be regarded as inconsistent with a statute creating an obligation to erect the fence and maintain it.

We are referred to the cases of *Visscher* v. *The Hudson River Railroad Company* (15 Barb., 37), and *Clarkson* v. *The same* (12 N. Y., 304), which hold that the provisions of the general railroad act, in respect to the mode of acquiring title to land for a roadway, are inconsistent with the provisions of the defendants' charter upon the same subject, and, therefore, do not apply to the defendants. An examination of those decisions shows that they proceeded upon very substantial grounds, which do not exist in the present case. The defendants' charter, as amended in 1848 (Laws of 1848, p. 39, ch. 30), and the general act, prescribed essentially different and incongruous modes of proceeding to acquire title to land, each complete in itself. Under the charter, a notice to the party was to be served or published ten days; the general law required four weeks' publication. The charter authorized proceedings in the Superior Court of the city of New York, or in the Supreme Court in any county of the State, for the appointment of five commissioners or appraisers, to be selected by the court, from the State at large. By the general law, the Supreme Court, in the district in which the land was situated, had sole jurisdiction; each party nominated six commissioners, from whom the court selected two on each side, and appointed the fifth; and the commissioners were all required to live in the county in which the land was situated. Under the charter, the roadway might be of any width required; by the general act, it was limited to ninety feet. The charter provided that, on filing the report of the commissioners, the court, on proof of payment or deposit of the money, should make a rule reciting the proceedings, which, on being recorded, should operate as a deed to the company. Under the general law, notice was to be given of an application to confirm the report, an appeal was authorized, and twenty days were allowed for appealing. In reference to these discordant provisions, Justice PARKER said, in Visscher's case: "The two modes of assessing damages and

obtaining title are incompatible and incongruous. The requirements of the general act are not additional to those of the charter. They cannot be ingrafted upon the charter." In Clarkson's case, DEAN, J., delivering the opinion of the court, said: " For these sections to apply to the defendants' manner of acquiring title, they must be consistent with the provisions of the defendants' charter. That is, not that they must be identical, but that, although they may differ in requiring something in addition to what was to be done before, they must not, in their requisitions, take away any of the rights to which the defendants were entitled under the charter." These extracts show the course of reasoning adopted in those cases. Tested by it, the provisions of the general act upon the point now under discussion, are not inconsistent with the defendants' charter. They do not deprive the company of any right ; they impose no new duty ; they simply regulate the performance of a duty which was imposed upon the defndants by their charter. If these views are correct, the 44th section of the act of 1850 applies to the defendants; and makes it their duty to keep the gate in repair.

If it be assumed, however, that that section does not apply, let us see how the case stands, under the eighth section of the act of 1854. That section is in these words : " Every railroad corporation, whose line of road is open for use, shall, within three months after the passage of this act, and every railroad company, formed or to be formed, but whose lines are not now open for use, shall, before the lines of such railroad are opened, erect and thereafter maintain fences on the sides of their roads, of the height and strength of a division fence as required by law, with openings or gates or bars therein, at the farm crossings of such railroad, for the use of the proprietors of the lands adjoining such railroads, and shall also construct, where the same has not already been done, and hereafter maintain, cattle guards at all road crossings, suitable and sufficient to prevent cattle, horses, sheep and hogs from getting on to such railroad. And so long as such fences and cattle guards shall not be made, and when not in good repair, such railroad corporation and its agents shall be liable

for damages which shall be done by the agents or engines of any such corporation to any cattle, horses, sheep or hogs thereon; and when such fences and guards shall have been duly made, and shall be kept in good repair, such railroad corporation shall not be liable for any such damages, unless negligently or willfully done. A sufficient post and line fence of requisite height shall be deemed a lawful fence, within the provisions of this section; but no railroad corporation shall be required to fence the sides of its roads, except when such fence is necessary to prevent horses, cattle, sheep and hogs from getting on to the track of the railroad from the lands adjoining the same."

The defendants are, undoubtedly, within the operation of this section, unless, as is claimed by them, it applies only to cases where fences and gates had not been constructed at the time that act was adopted. That claim is not warranted, by the language of the section, and, in my judgment, does not accord with its meaning. In describing the corporations to which the section relates, its framers used the comprehensive words, "*every* railroad corporation;*" and they specified, as well those corporations whose lines were then open for use, as those whose lines were not then open. In the case of *Corwin* v. *The New York and Erie Railroad Company* (13 N. Y., 53), DENIO, J., speaking of section 44 of the act of 1850, expressed the opinion that it "is not to be regarded as merely a regulation respecting division fences, between the land of the railroad corporations and those of adjoining property, but that it is rather to be considered as providing a safeguard for the protection of the lives of persons traveling by railroad; and of the property in animals, which citizens in the vicinity of those roads may own." This remark of the learned judge is justly applicable, also, to the section we are called upon to construe, and the fact that the section was intended, in a great measure, as a police regulation for the safety of the traveling public, strengthens the conclusion that it was designed to have the general scope indicated by its language, and to prescribe a uniform rule for the government of every railroad company in the State. It provides for two

distinct acts, the *erecting* of fences and gates, and the *maintaining* them; and although the former provision was unnecessary in cases where suitable fences and gates had already been built, yet the latter provision was useful in those cases, as well as where the fences and gates were thereafter to be constructed. Each provision is to be taken distributively, and to be applied to the cases in which it can have effect, *reddendo singula singulis.* Several other sections of the same act clearly apply to all the railroad corporations in the State, whether then existing or thereafter to be formed, and whether created by special charter or organized under the general law. (§§ 7, 10, 14, 17.)

No question can arise as to the power of the legislature thus to amend the defendants' charter, as it contains an express reservation of the legislative power to alter or repeal it, and besides, the 22d section of the charter subjects the corporation to the general restrictions and liabilities prescribed by the third title of the eighteenth chapter of the first part of the Revised Statutes, the eighth section of which provides, that the charter of every corporation, that shall thereafter be granted by the legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature.

I am of opinion that the defendants were charged with the duty of keeping the gate in repair, and, therefore, that the judgment appealed from should be reversed, and a new trial ordered.

Judgment accordingly: Davies, Ch. J., and Leonard, J., not voting.